UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Maggie DeLeon Alonso

v.                                    Civil No. 14-cv-429-JL
                                      Opinion No. 2015 DNH 170
Carolyn Colvin, Acting Commissioner,
Social Security Administration

**ORDER ON APPEAL**

Maggie DeLeon Alonso appeals the Social Security
Administration's ("SSA") denial of her application for disability
benefits.  An Administrative Law Judge ("ALJ") found that Alonso
suffered from a back disorder, arthritis, depression, and
anxiety.  The ALJ nevertheless found that Alonso was not disabled
within the meaning of the Social Security Act because she has
sufficient residual functional capacity ("RFC") to work at jobs
that exist in significant numbers in the national economy.  See
42 U.S.C. § 423(d)(2)(A).  The SSA Appeals Council subsequently
denied Alonso's request for review of the ALJ's decision,
rendering the ALJ's decision final.  Alonso timely appealed to
this court, pursuant to 42 U.S.C. § 405(g).  In due course,
Alonso moved to reverse the SSA's decision and the SSA's Acting
Commissioner moved to affirm the denial of benefits.

Alonso asserts four arguments.  First, she claims that the
ALJ erroneously assessed her credibility.  Next, Alonso argues
that the ALJ erred in determining her RFC.  Alonso also asserts

that the ALJ impermissibly used the Medical-Vocational Guidelines ("Grids") in assessing her disability and ability to work. Finally, Alonso argues that the ALJ failed to adequately develop the administrative record.

After consideration of the parties' arguments and the administrative record, the court finds the record evidence sufficient to support the ALJ's decision.  Therefore, Alonso's motion is denied and the Acting Commissioner's motion is granted.

## I.  **Standard of Review**

The court's review of SSA's final decision "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  The ALJ's decision will be upheld if it is supported by substantial evidence, that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted).  This is less evidence than a preponderance but "more than a mere scintilla." Id.; Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).  The possibility of drawing two inconsistent conclusions from the evidence does not preclude a finding of substantial evidence. Consolo, 383 U.S. at 620.  Accordingly, the ALJ's resolution of evidentiary conflicts must be upheld if supported

by substantial evidence, even if contrary results are supportable. Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 2 (1st Cir. 1987). The court next turns to the ALJ's decision.

## II. Background[1]

In analyzing Alonso's benefit application, the ALJ invoked the required five-step process. See 20 C.F.R. § 416.920. First, she concluded that Alonso had not engaged in substantial work activity after the alleged onset of her disability on March 16, 2010. Next, the ALJ determined that Alonso suffered from several severe impairments: a back disorder, arthritis, and depression and anxiety. See 20 C.F.R. § 416.1920(c). At the third step, the ALJ concluded that Alonso's impairments--either individually or collectively--did not meet or "medically equal" one of the listed impairments in the Social Security regulations. See 20 C.F.R. §§ 416.920(d), 416.925, & 416.926. The ALJ next found that Alonso had the RFC to perform sedentary work, with the modification that such work was unskilled. See 20 C.F.R. §§ 404.1567(a) and 416.967(a).

---

[1] The court recounts here only those facts relevant to the instant appeal. The parties' more complete recitation in their Joint Statement of Material Facts is incorporated by reference. See L.R. 9.1(d).

3

After finding at step four that Alonso could not perform any past relevant work, the ALJ proceeded to step five, at which the SSA bears the burden of showing that a claimant can perform other work that exists in the national economy.  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).  Here, the ALJ, relying on Alonso's testimony, medical records, and an impartial psychiatrist's testimony, applied the Grids and concluded Alonso could perform jobs which exist in the regional and national economy.  Accordingly, the ALJ found Alonso not disabled within the meaning of the Social Security Act.

## III.  **Analysis**

### A.  **Credibility**

In considering Alonso's claim, the ALJ stated that "the credibility of [her] allegations is weakened by inconsistencies between her allegations and the medical evidence. . . .  The claimant does experience some levels of pain and limitations, but only to the extent described in the RFC above."  See 20 C.F.R. § 404.1545(a)(3).  Alonso argues that the ALJ improperly weighted her ability to engage in activities of daily living, and failed to fully inquire into the nature and severity of her impairments insofar as they affected those activities.  The court finds the record sufficient to support the ALJ's credibility finding.

4

In analyzing Alonso's credibility, the ALJ was required to employ a two-step process, first determining if a medically determinable impairment is present, and if so, then evaluating the intensity, persistence and limiting effects of the alleged symptoms associated with such impairment. 20 C.F.R. § 404.1529. The second step of the analysis requires the ALJ to consider several factors:  1) claimant's daily activities; 2) the location, duration, frequency and intensity of pain or other symptoms; 3) precipitating and aggravating factors; 4) effectiveness and side effects of medication; 5) effectiveness of treatment; 6) measures taken by the claimant to relieve symptoms; and 7) any other factors concerning claimant's limitations. 20 C.F.R. § 404.1529(c); Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  Ultimately, however, an ALJ's credibility determination is entitled to deference, especially when supported by specific evidence. Simmons v. Astrue, 736 F. Supp. 2d 391, 401 (D.N.H. 2010) (citing Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("[t]he credibility determination by the ALJ, who observed the claimant, evaluated [her] demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings")).

5

With respect to activities of daily living, the ALJ noted record evidence that Alonso prepares meals, uses public transportation alone, shops, reads, watches television, goes to church, takes care of her children, and attends to her personal care needs.  These daily activities, the ALJ concluded, at least partially undermined her claims of disabling symptoms.  See Young v. Astrue, 2011 NH 140, 23 (observing that a claimant's performance of activities of daily living should not be equated to an ability to work, but can support a negative credibility finding).  To the extent Alonso cites record evidence that casts doubt on her ability to perform daily activities, such conflicting evidence is for the ALJ to resolve.  Seavey v. Barnhart, 276 F.3d 1, 10 (1st Cir. 2001).  The court also rejects Alonso's argument that the ALJ failed to mention that she needed help with some tasks and could not perform others.  See Teixeira v. Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010) ("That Teixeira claims to have had assistance from her older daughters in completing the household work and that she often takes breaks does not prevent the hearing officer from using the testimony of Teixeira's daily activities as one factor in assessing credibility.").

Alonso also argues that the ALJ should have developed the record further with respect to her activities of daily living.

6

But, as this court has noted, "[w]hen a claimant is represented, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored." Dubois v. Astrue, 2012 DNH 109, 13 n.4 (quoting Faria v. Comm'r of Soc. Sec., 187 F.3d 621, 1998 WL 1085810 at *1 (1st Cir.1998) (unpublished)).  However, even if she accurately assesses the ALJ's performance, Alonso fails to articulate in any meaningful fashion what additional evidence would have been adduced that might have altered the outcome.  This is also fatal to her argument.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 140 (1st Cir. 1987) ("We have held that remand is indicated only if, were the proposed new evidence to be considered, the Secretary's decision 'might reasonably have been different.'") (citation and internal quotations omitted).

Next, even if the ALJ's use of daily living activities to inform the credibility determination was somehow flawed, the record also reflects that the ALJ permissibly relied on the contrast between Alonso's subjective complaints and the medical evidence in that regard.  See Wrenn v. Barnhart, 2005 DNH 098, 27; SSR 96-7P, 1996 WL 374186 at *1.  For example, Alonso asserted that she had disabling difficulties in lifting, standing, walking, sitting, and using her hands.  The ALJ,

however, recounted records from Drs. Eyassu and Balmaceda, in
which Alonso reported, <u>inter alia</u>, normal strength in her upper
and lower extremities, the ability to bend 45 degrees, and full
range of motion of various joints.

Finally, Alonso avers that the ALJ failed to properly
consider all of the Avery credibility factors.  The court
disagrees.  First, it is important to note that the ALJ is <u>not</u>
required to "address every Avery factor in his opinion so long as
proper inquiry is made during the administrative hearing."  Ault
v. Astrue, 2012 DNH 005, 17.  Here, the record reflects such
proper inquiry.  The record further discloses that the ALJ
considered both Alonso's subjective complaints, the medical
records regarding those symptoms, and the contrast between the
two.  And although the ALJ did not specifically discuss Alonso's
medication, Alonso gives no indication here of any disabling side
effects that would have altered the outcomes.  Thus, any error by
the ALJ in this regard is harmless.  Evangelista, 826 F.2d at
140.

The court accordingly finds that the ALJ's credibility
finding is supported by substantial evidence.

**B.  RFC Determination**

As previously noted, the ALJ determined that Alonso had the
RFC to perform sedentary work, except that the work must be

8

unskilled.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  Alonso
alleges eight separate deficiencies in the ALJ's analysis. The
court finds that these allegations fall short of the mark and
that the RFC determination is supported by the record.  The court
addresses the RFC-related claims seriatim.

1.  Mental Limitations

    Alonso first argues that her RFC was improperly determined
because the ALJ failed to identify any mental limitations
resulting from her depression and anxiety, despite finding them
to be severe impairments.  The court disagrees.  In the first
instance, the finding of a "severe impairment" does not
inexorably preclude an RFC involving unskilled work.  See e.g.,
Downs v. Colvin, 2015 DNH 113 (affirming RFC limitation including
unskilled work notwithstanding severe mental impairment).  And
contrary to Alonso's assertion that the ALJ failed to take into
account limitations occasioned by her depression and anxiety, the
ALJ considered the opinion of Dr. Fujiwaka, a consultative
psychological examiner, who concluded that Alonso could follow
and understand simple directions and instructions, perform simple
tasks independently, maintain a schedule and make appropriate
decisions.  These abilities are not inconsistent with those
required for unskilled work: "the abilities (on a sustained
basis) to understand, carry out, and remember simple

9

instructions; to respond appropriately to supervision, coworkers, and usual work situations; to deal with changes in a routine work setting." SSR 85-15, 1985 WL 56857 at *4; see also Hines v. Astrue, 2012 DNH 121, 30.

In addition to Dr. Fujiwaka's report, the ALJ also relied on a state agency medical consultant, Dr. Reddy, who observed that Alonso could understand, execute and remember simple instructions and work-like procedures, maintain attention and concentration for at least two-hour periods, make simple work-related decisions, and sustain a normal day and week while maintaining a consistent pace.  Thus, contrary to Alonso's assertion, the ALJ did not ignore the Social Security Program Operations Manual Systems description of the mental abilities necessary for performing unskilled work.  Indeed, Dr. Reddy's observations covered every listed criterion, in either form or substance. Against this backdrop, the court finds that the ALJ properly considered Alonso's mental limitations in assessing her RFC.

2.  Weight given to Dr. Halperin

Alonso next argues that the ALJ erred in giving significant weight to the testimony of Dr. Edward Halperin, a non-treating psychiatrist who reviewed the medical record and testified that Alonso suffered from mild depression secondary to back pain, low back pain, some anxiety, and insomnia, and that she had mild

10

limitations in daily activities, social functioning, maintaining
concentration persistence and pace, and had no episodes of
decompensation.

The gist of the argument is that because Halperin's opinion
concerned whether Alonso's mental impairment met or equaled one
of the listed impairments at steps 2 and 3 of the evaluation
process, the ALJ could not consider it for RFC purposes. However,
the ALJ specifically noted:

> The limitations identified in the "paragraph B"
> criteria are not a residual functional capacity
> assessment (RFC), but are used to rate the severity of
> mental impairments at steps 2 and 3 of the Evaluation.
> The mental RFC used at steps 4 and 5 of the Evaluation
> requires a more detailed assessment, by itemizing
> various functions contained in the broad categories
> found in paragraph B.

Tr. at 37.

Moreover, not only did the ALJ recognize the difference between
the Paragraph B and RFC analyses, but the RFC analysis <u>does</u>
contain a detailed function-by-function discussion of the
opinions of Drs. Reddy and Fujiwaka.  The court finds no error in
the weight given to Dr. Halperin's opinion.

3.  <u>Dr. Fujiwaka</u>

Alonso next argues that the ALJ's RFC assessment did not
consider Dr. Fujiwaka's observation that she would have some
difficulty maintaining attention and concentration, could learn

11

new tasks but with extended time, and may have some difficulty relating with others and dealing with stress to a certain extent. Although the ALJ did not explicitly address this aspect of Dr. Fujiwaka's findings, the court finds no error.  As previously noted, Dr. Fujiwaka's opinion is not inconsistent with the demands of unskilled work.  Thus, any such error is harmless.

4.  Dr. Reddy

Alonso contends that the ALJ's RFC analysis failed to consider numerous mental limitations noted in Dr. Reddy's mental RFC assessment.  However, these limitations were indicated in boxes to be checked within the "summary" portion of the assessment, rather than the narrative.  The ALJ, however is not obligated to consider the "checkbox"" answers controlling.  See McGrath v. Astrue, 2012 DNH 060, 15 (finding that "the written narrative in section III of the form, rather than the checkboxes in section I" constitutes the claimant's mental RFC assessment); see also Social Security Administration Program Operation Manual System § DI 24510.060(B)(2)(a) & (4)(a)).  The court finds no error in the treatment of Dr. Reddy's assessment.

5.  Dr. Saint-Preux

Dr. Carl Saint-Preux opined that Alonso suffered from marked limitations in concentration, persistence and pace.  The ALJ,

however, gave Dr. Saint-Preux's opinion no weight because it was
inconsistent with an assessment several months earlier in which
Dr. Saint-Preux found no work-related mental functional
limitations.  This is permissible.  See Couture v. Colvin, 2015
DNH 128, 7 (noting that an ALJ may permissibly discount even a
treating medical provider's opinion if it is internally
inconsistent).  Once again, the court finds no error.

6.  Dr. Balmaceda

        The ALJ accorded little weight to the opinion of Dr. Casilda
Balmaceda, who limited Alonso to lifting or carrying less than 10
pounds and restricted her to sitting, standing, and walking two
hours each in an eight-hour workday.  The ALJ explained that Dr.
Balmaceda's opinion, like that of Dr. Saint-Preux, was both
internally inconsistent (because she had also indicated that
Alonso could sit for five hours at a time), and inconsistent with
the doctor's other treatment records, which noted that Alonso had
a normal gait, coordination and strength.  Against this backdrop,
the ALJ's finding is supported by substantial evidence.

7.  Felix Ortega

        In a Physical RFC questionnaire, Mr. Ortega, a physical
therapist, opined that Alonso could stand or walk for less than
two hours per day, would need a sit/stand option every hour and

13

would miss about three days of work per month.  The ALJ gave this opinion little weight because it was inconsistent with the record as a whole.  Alonso complains that the ALJ did not sufficiently address these purported inconsistencies.  However, in discussing other medical sources (i.e. not acceptable sources), the ALJ need only discuss "at least some of the reasons for the weight given." Scott v. Colvin, 2014 DNH 168, 6.  Given the ALJ's overall discussion of the medical record in discussing the weight given other medical providers, the court finds the ALJ's reasoning sufficient with respect to Mr. Ortega.

8.  <u>Credibility</u>

Alonso essentially repeats her argument that the ALJ improperly assessed her credibility in the RFC context.  Having already rejected the argument, the court declines to address it again.

**C.  <u>Medical Vocational Guidelines</u>**

Alonso argues that it was improper to for the ALJ to use the Grids as a framework because her RFC was improperly determined. The court having already determined that there was no error in the RFC determination, this claim fails.

14

**D.   Development of the Record**

Alonso's final point of contention is that the ALJ should have done more to develop the record.  To the extent this argument rehashes Alonso's argument addressed, <u>supra</u>, concerning her credibility and activities of daily living, it is again rejected.  And to the extent that Alonso faults the ALJ for not delving further into specific references in the medical records to other treatments, the court again points out that Alonso was represented by counsel, who did not indicate at the hearing that further inquiry was necessary.  Moreover, Alonso again fails to explain what such records would show.  The court finds no error in the ALJ's development of the record.

**IV.   Conclusion**

The ALJ's findings are supported by substantial evidence. Therefore, the Acting Commissioner's motion to affirm[2] is GRANTED and the plaintiff's motion to reverse[3] is DENIED.  The clerk shall enter judgment accordingly and close the case.

     **SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

---

[2]Doc. no. 9.

[3]Doc. no. 8.

Dated: September 3, 2015

cc:  Raymond J. Kelly, Esq.
     T. David Plourde, AUSA